NOT FOR PUBLICATION (Docket No. 4)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____
                                         :
LEONARDA MOORE,                 :
                                         :
              Petitioner,      :      Civil No. 09-1747 (RBK/KMW)
                                         :
             v.                  :      **OPINION**
                                         :
JOHN E. THOMPSON, District Director,  :
U.S. Citizenship Immigration Services, and :
JANET NAPOLITANO, Secretary of The   :
Department of Homeland Security,       :
                                         :
              Respondents.    :
_____  :

**KUGLER**, United States District Judge:

       This matter arises out of an appeal of a decision by the United States Citizenship and Immigration Services (USCIS) denying Petitioner Leonarda Moore's application for naturalization. This matter invokes the Court's authority under § 310 of the Immigration and Nationality Act, 8 U.S.C. § 1421(c),[1] to engage in de novo review of Ms. Moore's application. Respondents John E. Thompson and Janet Napolitano filed the First Motion to Dismiss and/or for Summary Judgment (Docket No. 4). The Court finds that although genuine issues of material

---

[1] "A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. 1421(c).

fact exist as to Ms. Moore's good moral character, no genuine issues exist as to her unlawful status. Therefore, the Motion is granted.

I.  **BACKGROUND**

The Motion before the Court is styled as a motion to dismiss and/or a motion for summary judgment. Because the Court's judgment relies on matters extraneous to the pleadings and because the Petition otherwise states a claim for relief that is plausible on its face, the Court will treat the pending Motion as one for summary judgment. Therefore, the following facts are derived from Respondents' Local Civil Rule 56.1 statement of undisputed facts, as agreed upon by Ms. Moore, and the administrative record. See Resp. br. at 1-4; Pet. br. at 3 (accepting Respondents' facts and disagreeing with "argumentative content").

Leonarda Moore is a native of Peru who first entered the United States in October of 1996 as a visitor using a Peruvian passport issued to her in June 1996 in Arequipa, Peru. AR[2] at 6-14. Her passport indicated that she was married and listed her name as Leonarda Enriquez De Quevedo. AR at 6-9. The stamps in her passport indicated that she departed and returned to the United States several times between 1996 and 1999. AR at 12-14.

Ms. Moore was married to Adriano Quevedo in 1976, seemingly in Peru. AR at 71, ¶ 2 (affidavit of Leonarda Moore). Ms. Moore and Mr. Quevedo had four children: 1) Jose Atilio, 2) Adriana, 3) Evelyn, and 4) Jorge Pompeyo. AR at 35. Ms. Moore and Mr. Quevedo filed papers to end their marriage in early 1997 and appeared in court in May 1997 to sign additional papers. AR at 71, ¶ 3. Unfortunately for Ms. Moore, her divorce did not become final in May 1997, but in fact became final on October 29, 1998. AR at 72, ¶ 4.

---

[2] Certified Administrative Record, attached as Exhibit 1 to Respondents' brief.

Notwithstanding, Ms. Moore married Oscar Mercado on August 21, 1997. AR at 72, ¶ 4. Mr. Mercado filed an alien relative petition, Form I-130, on behalf of Ms. Moore in September 1997. AR at 167-68. In the petition, Mr. Mercado listed Ms. Moore's name as Leonarda Mercado and indicated that she entered the United States on an uncertain date without having been inspected or admitted. AR at 167. The petition claimed Ms. Moore was married to Mr. Mercado and that she had never been previously married or divorced. AR at 167. The petition only listed Ms. Moore as having one child, Victoria Mercado. AR at 168.

In support of the petition, Ms. Moore listed no former husbands in the biographic information sheet. AR at 175. In further support of the petition, Ms. Moore provided a Peruvian passport issued to her in Patterson, New Jersey on July 31, 1997. AR at 10. The passport listed her name as Leonard Enriquez Salguero and indicated that she was unmarried. AR at 10. The alien relative petition was approved in April 1998. AR at 167-68.

In July 2000, Ms. Moore filed an application to adjust her status to a lawful permanent resident, Form I-485, based upon her marriage to Mr. Mercado. AR at 137-42. In the application, Ms. Moore again claimed entry without inspection. AR at 138, 141. In the section of the application asking Ms. Moore to list "all your sons and daughters," she only listed Victoria Mercado and Jessica Mercado. AR at 138.

Because Ms. Moore sought adjustment on the basis of having entered the United States without inspection, she was required to file a waiver request with the Attorney General, which she did in September 2001. AR at 143-46. Ultimately, Ms. Moore's application was granted and her status was adjusted to a lawful permanent resident on January 24, 2002. AR at 137-51. Notably, Ms. Moore readily acknowledges that she made misrepresentations in obtaining

3

permanent resident status.  See Petition at ¶ 7 ("These misrepresentations were never discovered by USCIS until more than five years later . . . ."); Pet. br. at 6.

Ms. Moore alleges that the cause of her misrepresentations (omitting her four other children and failing to acknowledge her last marriage), was physical and mental abuse by Mr. Mercado.  Petition at ¶ 7 ("When Mrs. Moore applied for her lawful permanent residency (green card), her abusive husband forced her under threat of violence to declare that she was never before married and had no children even though she had been married before and had four children with her former husband."); AR at 72, ¶ 6.  Later, Ms. Moore and Mr. Mercado were divorced on February 25, 2003.  AR at 30-31.

Subsequently, Ms. Moore married Timothy Moore on October 21, 2006.  AR at 129. Shortly after this third marriage, Ms. Moore filed an application for naturalization, Form N-400, on December 18, 2006.  AR at 93-97, 126-30.  In this application, Ms. Moore did not reveal her prior use of the name De Quevedo, AR at 126, did not acknowledge her previous marriage to Mr. Quevedo, AR at 129-30, but did for the first time reveal all six of her children.  AR at 93.  In the application, Ms. Moore also answered "no" to question 22(d), which asked whether she had ever been married to two persons at the same time.  AR at 95.  Further, Ms. Moore answered "no" to question 23, which asked if she had ever given false or misleading information to any U.S. government official while applying for any immigration benefit.  AR at 95.  Finally, Ms. Moore answered "no" to question 24, which asked if she had lied to any U.S. Government official to gain entry or admission to the United States.  AR at 95.

As to the question regarding previous marriages, Form N-400 asks, "How many times have you been married (including annulled marriages)?"  AR at 129.  Ms. Moore answered "2" to

this question, and listed Mr. Mercado and Mr. Moore.  AR at 129-30.  Ms. Moore later claimed that she did not mention her marriage to Mr. Quevedo because she believed it had been "erased and legally never occurred."  AR at 72, ¶ 7.

This and the above discrepancies came to light during the USCIS examination of Ms. Moore under oath on October 22, 2007.  During the exam, Ms. Moore orally affirmed under oath her responses to each of the questions in the Form N-400.  Resp. br., Ex. 2 at ¶ 5 (declaration of James Bonnette).  The examining officer noted a discrepancy regarding Ms. Moore's children between her previous applications to obtain immigration benefits and the current application, and therefore questioned her about that issue.  Id. at ¶ 6.  Specifically the officer asked her if she had been married to the father of the children, Mr. Quevedo, which she answered in the negative.  Id.  Nevertheless, the officer requested that Ms. Moore provide certified copies of the children's birth certificates, a sworn statement explaining why she had concealed them previously, and a sworn statement from the father of the children confirming that they were never married.  AR at 60.

Per the request, Ms. Moore provided documentation showing that she had been married to Mr. Quevedo, but which also showed that she was still married to Mr. Quevedo when she married Mr. Mercado.  AR at 32-40.  Ms. Moore also submitted an affidavit attempting to explain the past misrepresentations.  AR at 71-73.

USCIS denied Ms. Moore's naturalization application on November 27, 2007.  AR at 61-65.  The decision explained that Ms. Moore's application was denied because she lacked good moral character and because she was not lawfully admitted as a permanent resident.  AR at 64-65.  Specifically, the decision noted that Ms. Moore concealed her other children and her prior marriage in past filings, she lied under oath regarding her prior marriage to Mr. Quevedo, she

5

failed to reveal her prior name of Leonarda Enriquez de Quevedo, and she had a bigamous relationship with Mr. Mercado. AR at 64.

On December 26, 2007, Ms. Moore sought administrative review of her naturalization request. AR at 41. USCIS affirmed the denial on December 15, 2008, AR 3-4, and Ms. Moore filed the Petition for Review of Naturalization, pro se[3], on April 14, 2009. Respondents moved to dismiss and/or for summary judgment on August 5, 2009, and all parties have fully briefed the issues before the Court.

## II.    STANDARD

The Federal Rules of Civil Procedure apply to proceedings for citizenship "to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(3). Under this Rule, motions for summary judgment are properly considered in a petition for review of a denial of naturalization under 8 U.S.C. § 1421(c). See Chan v. Gantner, 464 F.3d 289, 295-96 (2d Cir. 2006).

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving

---

[3] While Ms. Moore is proceeding "pro se," she either has a remarkable grasp of the law for a layman, or someone with meaningful legal training is assisting her with her well-reasoned and well-researched filings.

6

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Id.

**III.    DISCUSSION**

This dispute seemingly comes down to two basic questions.  1) Did Ms. Moore have the subjective intent to obtain immigration benefits when she made misrepresentations in her testimony before USCIS?  2) Was Ms. Moore the "spouse" of Oscar Mercado at the time she sought adjustment of her immigration status?  The answer to the former is a genuine issue of material fact, but the answer to the latter is no.

The requirements for naturalization are set out in 8 U.S.C. § 1427.  Among other things, a person cannot be naturalized unless the person has (1) continuously resided in the United States for at least five years "after being lawfully admitted for permanent residence"; (2) has resided in the United States continuously up to the time of admission to citizenship; and (3) "during all the

periods referred to in this subsection," the person "has been and still is a person of good moral character." § 1427(a). As is relevant here, only the first and third conditions are in dispute.

Respondents make two arguments in support of summary judgment. First, they chiefly argue that Ms. Moore failed to show good moral character because she testified falsely under oath about her previous marriage to hide that she had lied during her adjustment application. Resp. br. at 14-15. Second, they argue that even if Ms. Moore demonstrated good moral character, she was not "lawfully admitted" because her status was adjusted on the basis of an improper bigamous marriage to Mr. Mercado. Id. at 15. Ms. Moore responds that her "misrepresentations" were really just honest mistakes; that the misrepresentations were immaterial; that the misrepresentations occurred beyond the five year period, and could thus not be considered; and that her marriage to Mr. Mercado was valid under New Jersey law. Pet. br. at 4, 7, 9, 10. The Court now turns to the merits of the parties' respective arguments.

    **A.**    **Good moral character: Did Ms. Moore have the subjective intent to obtain immigration benefits when she made misrepresentations in her testimony before USCIS?**

Under the Immigration and Nationality Act (INA), a person lacks good moral character if she "has given false testimony for the purpose of obtaining any benefits under [the INA]." 8 U.S.C. § 1101(f)(6); 8 C.F.R. § 316.10(b)(2)(vi). Section 1101(f)(6) applies to show a lack of moral character only when two conditions are met. See Kungys v. United States, 485 U.S. 759, 780 (1988). First, the person must give "testimony," which is "oral statements made under oath." Id. Second, the person must give false testimony "with the subjective intent of obtaining immigration benefits." Id. Subjective intent is a question of fact. Id. at 782 (plurality portion of the opinion (citing Pullman-Standard v. Swint, 456 U.S. 273, 288 (1982); Berenyi v. District

8

Director, INS, 385 U.S. 630, 634-635 (1967))).  False testimony under § 1101(f)(6) does not need to be material.  Id. at 779.  Additionally, review of moral character is not limited to conduct during the five years preceding the application for naturalization.  8 U.S.C. § 1427(e); 8 C.F.R. § 316.10(a)(2).

     Respondents argue that § 1101(f)(6) applies here and entitles them to summary judgment because during her USCIS hearing, Ms. Moore made a number of misrepresentations for the purpose of becoming naturalized.  Respondents assert that Ms. Moore gave false testimony when she orally affirmed her answers to questions 22(d),[4] 23,[5] and 24[6] on the Form N-400.  Resp. br. at 10.  The misrepresentations they focus on in particular are her failure to disclose her bigamous marriage to Mr. Mercado in question 22(d), her failure to disclose her other children and prior marriage in the N-400 and in past applications (as is relevant to questions 23 & 24), her failure to disclose her use of the name "Leonarda Enriguez de Quevedo" (as is relevant to questions 23 & 24), and her failure to previously disclose her actual manner of entry into the country (as is relevant to questions 23 & 24).  Resp. br. at 14.  Respondents argue that Ms. Moore's subjective intent is shown because "she had every reason to believe that admitting that she had lied in the past would undermine her chances of being granted citizenship."  Resp. reply br. at 3.  On these points, the Court is not convinced that Respondents have meet their burden of pointing out that

---

[4] "Have you EVER: . . . been married to more than one person at the same time?"  AR at 95.

[5] "Have you EVER given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?"  AR at 95.

[6] "Have you EVER lied to any U.S. government official to gain entry or admission into the United States?"  AR at 95.

no genuine issue exists for trial.

At the outset, it is worth noting that while Ms. Moore undoubtedly bears the ultimate burden of proof as to her eligibility for citizenship, see Berenyi, 385 U.S. at 637, Respondents bear the burden at summary judgment of pointing out that no genuine issue of material fact exists for trial. See Aman, 85 F.3d at 1080. Respondents have met that burden as to the "testimony" requirement since no genuine issue exists that Ms. Moore orally affirmed under oath her answers to the Form N-400. Resp. br., Ex. 2 at ¶ 5. Where Respondents have not met their burden is as to Ms. Moore's subjective intent.

Not every misrepresentation during testimony is grounds for finding the person seeking naturalization lacks good moral character; only false testimony given for the "precise intent" of obtaining immigration benefits is prohibited. Kungys, 485 U.S. at 780. "Willful misrepresentations made for other reasons, such as embarrassment, fear, or a desire for privacy [are] not deemed sufficiently culpable to brand the applicant as someone who lacks good moral character." Id. False testimony given because of a misunderstanding, misinterpretation, or an innocent mistake is also not prohibited. See Ajuz v. Mukasey, No. 07-0185, 2009 WL 902369, at *4 (E.D. Pa. Apr. 2, 2009) (citing cases regarding acceptable subjective intent). Thus, evidence of an intent other than to an intent to achieve benefits is grounds for denying a motion for summary judgment. See Gedi v. Gonzalez, No. 07-2507, 2009 WL 2515627, at *4 (N.D. Ga. Aug. 14, 2009) (holding petitioner's failure to disclose extended trip abroad and then subsequent disclosure raised a genuine issue of fact about his intent); United States v. Kirsteins, No. 87-964, 1990 WL 208722, at *5 (N.D.N.Y. Dec. 3, 1990) (holding defendant's assertion in denaturalization proceeding that his initial testimony was inaccurate due to fear or confusion

prevented summary judgment).

In this case, Respondents attempt to meet their summary judgment burden by pointing out that no genuine issue exists as to Ms. Moore's intent because of her repeated misrepresentations. Resp. reply br. at 3. Respondents rely on Golding v. Department of Homeland Security, No. 05-21095, 2009 WL 2222779, at *13 (S.D. Fla. July 27, 2009), seemingly for the proposition that repeated misrepresentations show a subjective intent to achieve immigration benefits. Resp. reply br. at 3. However, Respondents' reliance on Golding is misplaced. The decision there was not at the summary judgment stage, but rather at the conclusion of a de novo hearing on a petition. 2009 WL 2222779, at *1. At that stage, the burden was not on the respondents to show lack of good moral character, as it is at summary judgment, but rather the burden was on the petitioner to show that he met the requirements for citizenship. See id. at *14 ("Plaintiff did not meet his burden of showing good moral character to justify citizenship."); see also Berenyi, 385 U.S. at 637. Therefore, the petitioner's repeated misrepresentations failed to carry his burden. Id.

In this case – which is at the summary judgment stage – Respondents must do more than merely show that Ms. Moore made repeated misrepresentations. They must instead produce evidence showing a lack of genuine issue of material fact as to Ms. Moore's intent or point out how she cannot meet her burden. See Celotex, 477 U.S. at 325. They have not done so. The evidence of her multiple misrepresentations does not show a lack of dispute as to her intent. Respondents' logic, if followed, would mean that all misrepresentations are per se evidence of an intent to achieve benefits. This is simply not the rule under Kungys. Moreover, even if Respondents had met their burden, evidence exists that Ms. Moore's misstatements arose from

confusion or misunderstanding, rather than an intent to obtain benefits.  See AR at 71-72 (affidavit of Ms. Moore discussing her confusion regarding the status of her prior marriage).

Therefore, the Court must deny Respondents' Motion on the grounds that Ms. Moore lacks good moral character.

### B. Lawfully admitted: Was Ms. Moore the "spouse" of Oscar Mercado at the time she sought adjustment of her immigration status?

However, Respondents' Motion is proper and must be granted on the grounds that Ms. Moore was not lawfully admitted for permanent residence.

Ms. Moore was granted lawful permanent resident status under the provisions of § 212 of the INA, 8 U.S.C. § 1182.  AR at 143, 145.  The term "lawfully admitted for permanent residence" is statutorily defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20).  Lawfully admitted means the person's admission must be both procedurally and substantively proper.  Matter of Longstaff, 716 F.2d 1439, 1442 (5th Cir. 1983).  Under § 212(a)(9)(B)(i)(II) of the INA, an alien who has been unlawfully present in the United States for one year or more and who seeks admission within ten years of the date of the alien's departure or removal is inadmissible.  § 1182(a)(9)(B)(i)(II); AR at 145.  However, an alien falling within that provision may seek a waiver from the Attorney General if the person is the spouse of United States citizen or a lawfully admitted permanent resident and if the removal of the person would result in "extreme hardship" to the lawfully resident spouse or citizen.  § 1182(a)(9)(B)(v).  Ms. Moore sought and received such a waiver in receiving lawful permanent resident status.  AR at 137-51

Notwithstanding, Respondents argue, Ms. Moore achieved her permanent resident status by fraud. Resp. br. at 16. More specifically, Respondents argue that Ms. Moore was not lawfully admitted because her waiver through her bigamous marriage to Mr. Mercado, which was void under New Jersey law, was invalid. Id.; Resp. reply br. at 6. Their argument is essentially that Ms. Moore was not Mr. Mercado's "spouse." Ms. Moore responds by arguing that although her marriage to Mr. Mercado was void, the impediment was removed as of October 29, 1998 (the date of her divorce from Mr. Quevedo), Pet. br. at 10-11; the New Jersey Chancery Court otherwise recognized the marriage as valid, since it granted her a divorce rather than an annulment from Mr. Mercado, Pet. sur-reply at 7; and even void marriages under New Jersey law can be equitably enforced in some circumstances. Pet. sur-reply br. at 5-6. The Court disagrees with Ms. Moore.

Three principles are important to note at the outset. First, the mere fact that an alien has received lawful resident status does not mean that the status cannot be revoked. See Monet v. INS, 791 F.2d 752, 753 (9th Cir. 1986); Longstaff, 716 F.2d at 1442. Second, a person securing permanent resident status through a bigamous[7] relationship is not "lawfully admitted." See In re Koloamatangi, 23 I. & N. Dec. 548, 549-51 (2003);[8] In re Felix Rodriguez-Juarez, File: A76 732 448, 2006 WL 2391173 (BIA June 27, 2006) (citing Koloamatangi). Third, the place of

---

[7] Bigamy is the "act of marrying one person while legally married to another." Black's Law Dictionary 69 (3rd pocket ed. 2006).

[8] The above is a decision of the Board of Immigration Appeals (BIA), "the highest administrative body for interpreting and applying immigration laws." United States Department of Justice, Board of Immigration Appeals, http://www.justice.gov/eoir/biainfo.htm (last visited Jan. 21, 2010). At least one court has held that BIA decisions are to be afforded "[c]onsiderable deference" regarding interpretation and application of the immigration laws. See Monet, 791 F.2d at 753.

13

celebration governs the validity of a marriage for immigration purposes. Matter of Arenas, 15 I. & N. Dec. 174, 174-75 (1975).

In New Jersey, all marriages are void unless the parties have obtained a marriage license and the marriage was solemnized by an appropriate party. N.J. Stat. Ann. § 37:1-10. A marriage license can only be obtained by the parties swearing that no impediments to the marriage exist. N.J. Stat. Ann. § 37:1-8. One such impediment is a prior marriage that is still in full force and effect. See Dacunzo v. Edgye, 117 A.2d 508, 512 (N.J. 1955). A marriage entered into while this prior marriage impediment exists "is a nullity." Id. Stated differently, a bigamous marriage is "void Ab initio and not merely voidable." Hansen v. Fredo, 303 A.2d 333, 334 (N.J. Super. Ct. Ch. Div. 1973). Because the second marriage is void, removing the impediment does not validate the second marriage absent another ceremonial marriage. Metro. Life Ins. Co. v. Chase, 294 F.2d 500, 503 (3d Cir. 1961) (citing Dacunzo).

Under these circumstances, Ms. Moore did not achieve her lawful permanent resident status in a substantively proper manner. Ms. Moore does not dispute that her marriage to Mr. Quevedo did not end until October 29, 1998, that she married Mr. Mercado on August 21, 1997, and that she did not reveal her prior marriage during her application process. AR at 72, ¶ 4 (affidavit of Ms. Moore). This second marriage was void under New Jersey law. Ms. Moore would have the Court believe that the second marriage was somehow ratified on October 29, 1998, Pet. br. at 11, and/or that the New Jersey Chancery Court otherwise recognized the marriage as valid, since it granted her a divorce rather than an annulment from Mr. Mercado. Pet. sur-reply at 7. The Court must reject both of these assertions. Under Dacunzo, the fact of Ms. Moore's divorce from Mr. Quevedo did not remove the impediment to, and therefore

14

validate, her marriage to Mr. Mercado. Further, because she received a divorce from Mr. Mercado does not somehow show that her marriage to him was valid as a matter of law. New Jersey precedent is clear: a bigamous marriage is void and cannot be redeemed absent compliance with the statutory requirements. Ms. Moore has not shown that she was validly married to Mr. Mercado when she received her permanent resident status.

As to Ms. Moore's equitable argument, that too must fail. Regardless of the circumstances under which a void bigamous marriage under New Jersey law may nevertheless be enforced, e.g., to avoid obligations from a divorce, see Hansen, 303 A.2d at 334-35, this Court does not have the authority to apply equitable remedies here. Citizenship can only be obtained through compliance with the immigration laws, and compliance must be strict. See INS v. Pangilinan, 486 U.S. 875, 883-84 (1988); see also 8 U.S.C. § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter and not otherwise."). Simply put, a reviewing court lacks discretion to consider equity in reviewing an application for naturalization. Cf. Pangilinan, 486 U.S. at 883-84. Here, Ms. Moore knowingly concealed her past marriage, albeit seemingly under duress. Her marriage to Mr. Mercado was also bigamous and void as a matter of law. Under these circumstances, she did not obtain lawful permanent resident status in substantively proper way and has thus not met the requirements for naturalization.

Therefore, the Court must grant Respondents's Motion on the grounds that Ms. Moore was not lawfully admitted for permanent resident status.

### IV.   CONCLUSION

For the foregoing reasons, Respondents' Motion for Summary Judgment is **GRANTED**.

Date: 1-27-10                                                                  /s/ Robert B. Kugler
                                                                               ROBERT B. KUGLER
                                                                               United States District Judge